2005 ND 130

## In the Interest of C.H.

**William Pryatel, M.D., Petitioner and Appellee**

v.

**C.H., Respondent and Appellant.**

No. 20050209.

Supreme Court of North Dakota.

July 13, 2005.

Jay A. Schmitz (on brief), Assistant State's Attorney, Jamestown, ND, for petitioner and appellee.

Thomas E. Merrick (on brief), Jamestown, ND, for respondent and appellant.

KAPSNER, Justice.

[¶ 1]   C.H. appeals an Order for Hospitalization and Treatment with Medication, arguing there was not clear and convincing evidence he is a person requiring treatment.  We affirm.

## I.

[¶ 2]   C.H. was admitted to the North Dakota State Hospital ("State Hospital") for 14 days by an Order for Hospitalization and Treatment dated April 27, 2005.  C.H. has been diagnosed with Schizoaffective Disorder, bi-polar type, with symptoms including anger, irritability, and rapid and pressured speech.  He received treatment at the State Hospital three times between 1998 and 2003.  C.H. denies he has a mental illness and refuses to take sufficient amounts of medication.  He visited the Grand Forks County Courthouse numerous times, exhibiting erratic behavior that, while non-threatening, caused the people at the courthouse to be "on guard." C.H. also went to the Northeast Human Service Center to request the mental illness diagnosis be removed from his medical records because he believed the diagnosis was interfering with his attempts to find employment and join the National Guard.  He was non-aggressive during this visit but appeared paranoid and manic, speaking of an ongoing psychological operation against him.

[¶ 3]   After a hearing held May 20, 2005, the district court found C.H. requires hospitalization and medication to prevent a deterioration in his condition that could result in C.H. becoming dangerous to himself and others.  He was ordered treated and medicated for "a period not to exceed 90 days."

## II.

[¶ 4]   This Court reviews the "procedures, findings, and conclusions of the lower court."  *Interest of H.G.*, 2001 ND 142, ¶ 3, 632 N.W.2d 458.  The lower court's findings should be based upon clear and convincing evidence, and this Court reviews those findings under the clearly erroneous standard.  *Id.* A finding is clearly erroneous when it is induced by an erroneous view of the law, not supported by evidence, or this Court has a definite and firm conviction, based on the entire evidence, a mistake has been made.  *Id.*

[¶ 5]   In commitment proceedings, the petitioner has the burden of proving the respondent is a "person requiring treatment."  *H.G.*, 2001 ND 142, ¶ 4, 632 N.W.2d 458.  There is a presumption against treatment.  *Id.* Section 25–03.1–02(12), N.D.C.C., states, in pertinent part:

"Person requiring treatment" means a person who is mentally ill or chemically dependent, and there is a reasonable expectation that if the person is not treated there exists a serious risk of harm to that person, others, or property. "Serious risk of harm" means a substantial likelihood of:

. . .

d.   Substantial deterioration in mental health which would predictably result in dangerousness to that person, others, or property, based upon evidence of objective facts to establish the loss of cognitive or volitional control over the person's thoughts or actions or based upon acts, threats, or patterns in the person's treatment history, current condition, and other relevant factors, including the effect of the person's mental condition on the person's ability to consent.

[¶ 6]   A two-step process is used to determine whether someone is a "person requiring treatment."  *H.G.*, 2001 ND 142, ¶ 4, 632 N.W.2d 458.  The court must first find the person is mentally ill, and then "the court must find that there is a

reasonable expectation that if the person is not hospitalized there exists a serious risk of harm to himself, others, or property." *Id.* (quoting *In the Interest of J.A.D.*, 492 N.W.2d 82, 83 (N.D.1992)). Testimony at the hearing established C.H. suffers from Schizoaffective Disorder, bi-polar type, satisfying the first prong of the test. C.H. argues the district court's findings on the second prong were erroneous.

[¶ 7] In support of the order, the district court found:

The following statements, behaviors, or conditions are evidence of danger to self, others, or property: [C.H.] has been loitering at the Grand Forks County Courthouse with no apparent purpose. He has made bizarre statements to employees and has been obsessed with expunging his mental health records. When given the opportunity to contact a superior at the Northeast Human Service Center, he has failed to put his complaints in writing. His thoughts are way beyond rational.

A treatment program other than hospitalization would not be adequate to meet [C.H.'s] needs or sufficient to prevent harm or injuries to [C.H.] or others. The specific risks if [C.H.] is not hospitalized are that he will continue to deteriorate and become more obsessive and paranoid. He will put himself into situations where he will end up in fights. He will continue to annoy people at the Northeast Human Service Center and the Grand Forks County Courthouse.

[¶ 8] C.H. argues all of the testimony noted that his behavior, while bizarre, never physically endangered himself or others. The courthouse deputy testified C.H.'s comments, while non-threatening, were "borderline" threatening. He further testified C.H.'s "incoherent ramblings" put him "on guard." A social worker from the Northeast Human Service Center testified C.H. has a history of physical aggression, citing the existence of three restraining orders against him. C.H. acknowledged his ex-wife has a restraining order against him. Both the deputy and the social worker testified C.H. was verbal, disruptive, and used foul language. There was testimony C.H. was involved in a fight with construction workers in a bar in Thompson, North Dakota, because he would not stop "preaching" to them when they requested he stop. Further testimony indicated C.H. made threatening comments to his family and a groomsman at his brother's wedding rehearsal dinner. C.H. admitted these incidents occurred but claims they were misunderstandings.

[¶ 9] On this record, there was sufficient evidence to support the court's finding that C.H. would suffer "substantial deterioration in mental health which would predictably result in dangerousness to that person, others, or property" unless he received treatment. We conclude the commitment order was not clearly erroneous.

[¶ 10] We affirm.

[¶ 11] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and DALE V. SANDSTROM, JJ., concur.